UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
**NORTHERN DIVISION at COVINGTON**

SANDRA M. HARDING,            )
                             )
    Plaintiff,           )    Civil No. 2:17-cv-74-JMH
                             )
V.                           )
                             )
NANCY A. BERRYHILL, Acting    )    **MEMORANDUM OPINION AND ORDER**
Commissioner of Social Security, )
                             )
    Defendant.           )

****

Plaintiff Sandra M. Harding seeks judicial review of the Commissioner's final decision denying her claim for Disability Insurance Benefits (DIB). The matter is before the Court on cross-motions for summary judgment (DEs 11 and 13).

Plaintiff filed her current application[1] for disability insurance benefits (DIB) in January 2014, alleging disability beginning July 20, 2009, due to carpal tunnel syndrome, left knee arthritis, and low back pain (Tr. 204-05, 219). After a hearing on December 1, 2015 (Tr. 59-93), an ALJ denied Plaintiff's claim on December 17, 2015 (Tr. 38-58), and the Appeals Council then denied Plaintiff's request for review (Tr. 1-6), making the ALJ's decision the final agency decision for purposes of judicial review. 20 C.F.R. § 404.981, 422.210(a).

---

[1]Plaintiff had previously filed an application for disability benefits in February 2013, which was denied at the administrative level (Tr. 215). No further review was sought.

Plaintiff last met the special insured status required for eligibility for DIB on December 31, 2014[2](Tr. 207). She was 48 years old on that date (Tr. 64), has a high school equivalent education (Tr. 220), and worked in the past as a machine operator (Tr. 89).

Plaintiff stopped working in March 2009 for reasons unrelated to her alleged disability (Tr. 219, 348). She variously reported that she stopped working to take care of her sick daughter (Tr. 219), but said in 2013, that she was laid off from her factory job in March 2009 (Tr. 348). There are no treatment records from any source prior to January 2014, but in connection with her prior application, Plaintiff underwent a consultative examination with Edgar A. Lopez-Suescum, M.D. in May 2013. Dr. Lopez-Suescum found Plaintiff had a normal gait and got on and off the exam table without limitations (Tr. 349). She had decreased chest expansion and bilateral expiratory wheezing, and she developed moderate shortness of breath during range of motion testing. Plaintiff had full grip strength in her hands and full strength in her arms and legs, as well as well-preserved gross and fine manipulation skills. There was no evidence of carpal tunnel, but Dr. Lopez-Suescum noted Plaintiff could have arthritis of the wrists. He assessed chronic

_____

[2] To qualify for DIB, a claimant must establish disability on or before the date her insured expired. 20 C.F.R. § 404.101. *Moon v. Sullivan*, 923 F.2d 1175, 1182 (6th Cir. 1990). In this case, Plaintiff's insured status expired on December 31, 2014.

laryngitis, tobacco use disorder, chronic bronchitis, obesity, rule out coronary artery disease and pulmonary emphysema, and rule out wrist arthritis (Tr. 350).

In March 2014, Plaintiff was diagnosed with breast cancer and subsequently underwent a mastectomy and lymph node biopsy, and started chemotherapy (Tr. 406.-408, 543). Plaintiff's primary care doctor Sherif Malek, D.O., and her oncologist Muhammad Ali Zaydan, M.D., managed her treatment during her chemotherapy (Tr. 418-507, 508-77, 589-671, 672-79, 701-39). Plaintiff developed lymphedema in her extremities, which Dr. Zayden attributed to the lymph node dissection (Tr. 556). She also had dermatitis (Tr. 605), and reported the chemotherapy caused various symptoms including burning pain in her arms and legs and generally feeling ill (Tr. 603, 609, 615).

On August 6, 2014, Dr. Malek noted Plaintiff had finished the hard chemotherapy, but would continue to have weekly injections. She reported that her upper and lower extremity edema was greatly improved and she was starting to feel much better (Tr. 619). Dr. Malek found Plaintiff looked "so much better today." The edema in her left arm had significantly decreased, although she still had edema in her feet. Her skin also appeared to be getting better (Tr. 620).

On August 13, 2014, Plaintiff reported that since her chemotherapy ended three weeks earlier, she had been "doing so

much better" (Tr. 627). Dr. Malek noted Plaintiff looked better, seemed happier, and was more alert (Tr. 629). On August 29, 2014, Dr. Malek noted Plaintiff was getting much better and her chemotherapy-induced dermatitis was resolving. He thought Plaintiff's edema would also continue to get better (Tr. 635).

On September 5, 2014, Plaintiff had no concerns or issues except for the edema (Tr. 639). Two weeks later, Dr. Malek noted that Plaintiff had edema in her right hand, but the dermatitis had significantly improved and was almost resolved (Tr. 644). On October 3, 2014, Dr. Malek stated Plaintiff's lymphadenopathy was significantly improved (Tr. 647). He observed Plaintiff's dermatitis had resolved and her legs looked normal again. Plaintiff was able to walk up to a half mile (Tr. 650).

On November 20, 2014, Dr. Malek noted Plaintiff was not having significant lymphedema. She was wearing a compression stocking on her left arm and compression glove on her left hand. Dr. Malek commented that Plaintiff looked much better than she had in quite a while (Tr. 663). He also said Plaintiff had come a long way and was overall doing much better than she had.

Prior to the date she was last insured for benefits, Plaintiff also had treatment for knee pain. In April 2014, Ron P. Handshoe, M.D., diagnosed Plaintiff with a knee strain and sent her for physical therapy (Tr. 413). That fall, a right knee MRI showed mild to moderate tricompartmental degenerative joint disease (Tr.

659). Plaintiff consulted with Carrie A. Carter, an orthopedic physician's assistant on December 12, 2014. On examination, Plaintiff had knee tenderness, but she walked with a normal gait and had full muscle strength, and no swelling or instability (Tr. 751). Ms. Carter recommended Plaintiff elevate, ice, and rest her knees, and gave her corticosteroid injections (Tr. 751-52).

Treating and examining medical sources provided opinions but reached widely differing conclusions about the extent of Plaintiff's limitations. In July 2014, Dr. Malek stated that Plaintiff had limited use of her right arm due to lymphedema and could not lift "at this time" (Tr. 579). He said Plaintiff could stand and walk only five to ten minutes at a time and only two hours total in an eight-hour day, and could not climb, crouch, kneel, or crawl. Dr. Malek also thought Plaintiff had limitations in reaching, handling, feeling, pushing and pulling and that she had constant pain that interfered with the attention and concentration needed to perform even simple tasks (Tr. 580). He concluded Plaintiff would miss more than four days of work per month and that she could not work "at this time" (Tr. 581).

Also, in July 2014, state agency physician Douglas Black, M.D., reviewed Plaintiff's record and assessed limitations consistent with light work (Tr. 122-23).

In October 2014, Dr. Zaydan opined Plaintiff could stand and/or walk six to eight hours daily, but could lift and carry less than 10 pounds with her right arm and only occasionally push, pull, climb, and do overhead work (Tr. 587).

At the administrative hearing on December 1, 2015, Plaintiff testified that since her breast cancer and mastectomy, she experiences sharp pain in her chest two or three times a week and was not supposed to lift more than 10 pounds with her right arm (Tr. 81). She stated became short of breath if she walked too far because of her chronic obstructive pulmonary disease, although she continued to smoke a half pack of cigarettes every day (Tr. 67). She reported that she had lymphedema in her right arm, which made it difficult to use her hand (Tr. 68). Plaintiff said she underwent injections in her knees every three months for arthritis, which wore off after about a month (Tr. 69). She also discussed having constant dull back pain that sometimes radiated down her legs (Tr. 70), and painful neuropathy in her feet from the chemotherapy (Tr. 71). Plaintiff estimated that she could walk about 35 to 40 feet at a time (Tr. 84).

After carefully considering the entire record, the ALJ concluded that prior to December 31, 2014, her date last insured, Plaintiff's impairments, though limiting, would not prevent her from performing a range of light work with restrictions on working around extreme temperatures, vibration, and hazards (Tr. 47).

Based on the vocational expert's testimony, the ALJ concluded that prior to Plaintiff's date last insured, she could not perform her past work, but could perform other light jobs existing in the national economy in significant numbers including mail sorter, office helper, and photo scanner (Tr. 51). Thus, he found Plaintiff not disabled (Tr. 52).

The court's review of the Commissioner's decision is limited to an inquiry into whether the Commissioner's findings are supported by substantial evidence, and whether the correct legal standards were applied. 42 U.S.C. § 405(g); *Richardson v. Perales*, 402 U.S. 389, 390, 401 (1971). "The substantial evidence standard is met if a reasonable mind might accept the relevant evidence as adequate to support a conclusion." *Longworth v. Comm'r of Soc. Sec.*, 402 F.3d 591, 595 (6th Cir. 2005) (internal citations omitted).

Plaintiff presents three narrow challenges to the ALJ's consideration of her disability claims. She argues that the ALJ did not adequately develop the record, did not properly determine the onset date of Plaintiff's disability, and gave too much weight to the state agency physician's opinion (Pl.'s Br. at 7-12). Plaintiff has thus waived any arguments as to any other issue not raised or argued with specificity in her brief. *See Hollon v. Comm'r of Soc. Sec.*, 447 F.3d 477, 491 (6th Cir. 2006) ("[W]e limit our consideration to the particular points that Hollon appears to

raise in her brief on appeal."); *United States v. Elder*, 90 F.3d 1110, 1118 (6th Cir. 1996) ("[I]ssues adverted to in a perfunctory manner, unaccompanied by some effort developed argumentation, are deemed waived." For the reason set out below, Plaintiff's arguments about the ALJ's consideration of the medical evidence and his residual functional capacity determination do not withstand scrutiny. The Court finds the ALJ reasonably considered the total record including all relevant objective medical evidence in the making of his residual functional capacity determination, and in determining that Plaintiff retained the capacity to perform a range of light work.

First, Plaintiff argues that the ALJ should have re-contacted Drs. Malek and Zaydan before rejecting their opinions (Pl.'s Br. at 7-9). The agency's regulations provide that, when the evidence received from a treating physician or psychologist or other medical source is insufficient for a determination of disability, or after weighing the evidence the agency cannot reach a conclusion about disability, it will try to resolve the problem and may do so by re-contacting the treating physician, psychologist, or other source for clarification. See 20 C.F.R. § 404.1520b(c). Here, however, the evidence was not insufficient for a determination of disability. The ALJ had the benefit of Dr. Malek's and Dr. Zaydan's own office notes, which did not support a finding of disability. Nor was the ALJ unable to reach a conclusion about

disability after weighing the evidence. Under these circumstances, the ALJ was not required to re-contact either physician. *See Ferguson v. Comm'r of Soc. Sec.*, 628 F.3d 269, 274 (6th Cir. 2010) (Where the treating physician's "opinion was deemed unpersuasive not because its bases were unclear, but because they were not corroborated by objective medical evidence," the ALJ did was not required by SSR 96-5p to re-contact the treating physician.).

As the ALJ discussed (Tr. 55), Dr. Malek's and Dr. Zaydan's opinions were not consistent with the treatment records. Plaintiff experienced significant side effects during her chemotherapy including lymphedema (Tr. 430, 556, 595, 609, 615). But even during her chemotherapy, Dr. Zaydan described Plaintiff as "healthy-looking" (Tr. 547, 551, 555, 557, 560, 561, 563, 567). And Dr. Malek noted in June 2014, that Plaintiff had "no complaints" at that time and was "in very good spirits" (Tr. 599). After Plaintiff's chemotherapy ended, Dr. Malek recorded steady and significant improvement in her symptoms. On August 6, 2014, Plaintiff said her edema was greatly improved and she was starting to feel much better and Dr. Malek observed Plaintiff looked better (Tr. 620). A week later, Plaintiff said she was "doing so much better" and Dr. Malek noted Plaintiff seemed happier and was more alert (Tr. 629). At the end of that month, Dr. Malek stated Plaintiff's chemotherapy induced dermatitis was resolving (Tr.

635).  Throughout the fall of 2014, Dr. Malek documented continued improvement in Plaintiff's lymphedema (Tr. 639, 644, 647, 650). On November 20, 2014, Dr. Malek stated Plaintiff was not having significant lymphedema and she was overall doing much better (Tr. 663).  This evidence showing Plaintiff's symptoms improved after the completion of her chemotherapy indicates that the limitations Dr. Malek and Dr. Zayden assessed were temporary, not long-term restrictions.  Moreover, Plaintiff's own statements contradicted the opinions.  For instance, Plaintiff reported in October 2014, that she could walk up to a half mile (Tr. 650), which conflicts with Dr. Malek's opinion she could stand and walk only five to ten minutes at a time (Tr. 580).

Relying on *Jones v. Astrue*, 808 F.Supp.2d 993 (E.D.Ky. 2011), Plaintiff asserts that the ALJ erred in relying on the opinion of non-examining physician, Dr. Black because a nonexamining source's opinion cannot be used to support an ALJ's decision denying benefits where it is not based on a review of the entire record (Pl.'s Br. at 11-12).  The Court rejects this argument.

In *Helm v. Comm'r of Soc. Sec.*, 405 F.App'x 997 (6th Cir. 2011), the Sixth Circuit stated that:

> [t]her is no categorical requirement that the non-treating source's opinion be based on a "complete" or "more detailed and comprehensive" case record. The opinions need only be "supported by evidence in the case record." Once the ALJ determine[s] not to accord [the treating physician's] opinion "controlling weight," the

ALJ [i]s required only to provide "good reasons" for
giving greater weight to the opinions of agency sources.

*Id.* at 1002 (addressing SSR 96-6p, 1996 WL 374180) (internal
citations omitted); *see also Fry v. Comm'r of Soc. Sec.*, 476
F.App'x 73, 75 (6th Cir. 2012) ("According to [Plaintff], [the
non-examiner's] opinion was inadequate because it was based on a
review of the record before she began treatment with [her treating
physician].    However the ALJ properly considered [the non-
examiner's] report as opinion evidence." (citing 20 C.F.R. §
404.1527)).   As the Sixth Circuit rule stands, when an ALJ decides
not to afford a treating physician's opinion "controlling" weight,
the ALJ need only provide good reasons for assigning greater weight
to the non-examiner(s)'s opinion.    *Helm*, 405 F.App'x at 1002.
Here, as discussed above, the ALJ provided sufficiently good
reasons for giving little weight to the opinions of Drs. Malek and
Zaydan (Tr. 55).   Despite Plaintiff's reliance on *Jones*, for the
proposition that the opinion of a non-examining expert who does
not examine a complete record does not comprise substantial
evidence, the Court finds the Sixth Circuit precedent in *Helm* and
*Fry* more persuasive and finds the ALJ's determination to give Dr.
Black's opinions greater weight was reasonable.

Plaintiff next argues that under SSR 83-20, the ALJ erred in
determining her onset date (Pl.'s Br. at 9-11).   The Court rejects
Plaintiff's contention that the ALJ was required to make a finding

about the onset of disability. "The onset date of disability is the first day an individual is disabled as defined in the Act and the regulations." SSR 83-20, 1983 WL 31249, at *1. As that statement makes clear, a finding of disability is a prerequisite to determining the onset date of disability. In other words, the SSR contemplates that the onset date of disability might need to be inferred after the claimant is found disabled. *See id*. ("In addition to determining that an individual is disabled, the decision maker must also establish the onset date of disability." (emphasis added)). Thus, where, as here, an ALJ did not find the claimant disabled prior to her date last insured, the ALJ had no duty to determine the onset of disability. *Key v. Callahan*, 109 F.3d 270, 274 (6th Cir. 1997) (since there was no finding that the claimant was disabled, no inquiry into onset date is required).

Finding no error on the part of the Commissioner, the decision is **AFFIRMED.**

Accordingly,

**IT IS ORDERED** that Plaintiff's Motion for Summary Judgment [DE 11] be, and it hereby is, **DENIED** and that Defendant's Motion for Summary Judgment be, and it hereby is, **GRANTED.**

A separate judgment in conformity herewith shall this date be entered.

This the 21st day of September, 2018.



Signed By:

*__Joseph M. Hood__*

**Senior U.S. District Judge**